

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John H. Winters
Executive Director
State Department of Public Welfare
Austin 3, Texas

Dear Sir:

Opinion No. 0-6387
Re: Where recipient had been un-
justly removed from receiving
Old Age Assistance and upon ap-
peal the Appeal Board reinstat-
ed recipient but before the past
due payments were mailed recip-
ient died; quaere: (a) are
the past due assistance payments
due and if so to whom? (b) if
payable the procedure to be fol-
lowed to make the proceeds avail-
able.

  Your recent letter presents the hereinafter stated
facts and asks this department's opinion as to the law applic-
able to the facts of the stated fact situation. We quote from
your letter for the presented facts and questions:

  "A man and his wife were receiving old age
assistance until they were reinvestigated on July
12, 1944 when they were denied, effective August
1, 1944. They gave notice of appeal on October 5,
1944, and the appeal was held on October 19, 1944.
The Appeal Board reversed the decision of the local
office on October 31, 1944. Following the revers-
al of the decision, the case was reinvestigated,
and the recipients were granted assistance in the
amount of $14 for the husband and $23 for the wife.
One of the recipients died on November 18, 1944.
The Department, unaware of her death, mailed on
December 1, 1944, checks for each of them repre-
senting payment for the months of August, Septem-
ber, October and November, 1944. Upon notice of
her death, the November warrant was reissued in
accordance with the provisions of House Bill 135
and the rules and regulations of the department.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable John H. Winters, page 2

"* * * the Department has promulgated rules
and regulations in accordance with House Bill 135,
Acts of the 48th Legislature, which permits us to
make available to the person responsible for the
care of the recipient the warrant for the month
in which the recipient died.  Under these regula-
tions, the proceeds of the November warrant were
made available to the spouse.

"Under the Departmental policies, if the Ap-
peal Board reversed the decision of the local of-
fice, the recipient is entitled to reimbursement
for the amount of money in which through error he
failed to receive, provided he appeals within three
months from the date of the decision.  It was in
accordance with this policy that the retroactive
payments were issued to the deceased recipient.

"May the Department make these warrants as
described above, available to the spouse of the
deceased recipient or to her estate?

"If you answer the first question in the af-
firmative, then, what procedure should be fol-
lowed by the Department in making the proceeds
available?"

Our present society, highly industrialized, with a
majority of the people wage-earners, and where the wages,
after deductions for proper, healthful living, taxes, etc.,
are too low to permit savings for old age illustrate the need
that brought about the conception of the modern view of the
public duty, i.e., society, the State, - to step in and provide
for that protection - assistance to the helpless and unfortunate.
This fact has changed the aspect of our thought on the subject.
Assistance now is a function of government.

At the August election of 1935, the people of Texas,
mindful of this obligation, amended our basic law instructing
their legislature to, among other things, provide assistance
to the aged and needy.  At this election the people voted into
the Constitution of the State of Texas, Section 51-b of Article
3, which empowered the Legislature to provide for old age as-
sistance to bona fide citizens of Texas over the age of 65

Honorable John H. Winters, page 3

years, with certain constitutional limitations and restric-
tions. Pursuant to this constitutional mandate the Legisla-
ture passed the Public Welfare Act which is carried into Ver-
non's Civil Statutes of the State of Texas Annotated as Arti-
cle 695c. Section 20 of said designated Article 695c sets out
the eligibility of persons to odl age assistance. And Sections
22 and 23 of the Article provide for applications for assist-
ance and the inevestigation by the State Department of Public
Welfare. Section 23 provides for frequent reconsideration and
reinvestigation of "all assistance granted under the provi-
sions of this act to needy, aged persons." And said Section
24 also authorizes upon such re-examination a change in the
amount of payment or the removal of the recipient's name from
receiving such assistance "if the State Department finds that
the recipient's circumstances shall have altered sufficiently
to warrant such action. The State Department may at any time
cancel and revoke assistance or it may suspend assistance for
such period of the recipient under the provisions of this Act.
Whenever assistance is thus withdrawn, revoked, suspended, or
In any way changed, the State Department shall at once notify
the recipient of such decision." Section 25 authorizes an
appeal by the aggrieved applicant or recipient.

Section 29 of the Act, (695c)as amended by the 48th'
Legislature is as follows:

"Old age assistance, * * * shall not be
transferable or assignable, at law or in equity,
and none of the money paid or payable under the
provisions of this Act shall be subject to ex-
ecution, levy, attachment, garnishment, or other
legal process, or to the operation of any insol-
vency law; the provisions of this Act providing
for old age assistance * * * shall not be constru-
ed as a vested right in the recipient of such as-
sistance; provided, however, in case any person who
is an approved recipient of old age assistance
* * * living on the first day of any month, or liv-
ing at the date of the issuance of the check, or
living at the date of the mailing of the check,
and entitled to assistance for that month, dies
before the check issued for such assistance, for
the month in which the death occurs, has been en-
dorsed or cashed by recipient, the amount of said

Honorable John H. Winters, page 4

check may be paid to any person determined by the Department of Public Welfare to have been responsible for the caring of therecipient at the time of his death and responsible for the payment of obligations incurred; the County Judge of the county wherein therecipient died will endorse the check payable only to the person whom the Department of Public Welfare has determined responsible for the care of the recipient at the time of the latter's death and who is responsible for the payment of obligations incurred by the recipient; * * *"
(Underscoring ours)

It is of significance that the statute does not provide for partial payment of the assistance - that is prorating the amount of the payment as of the date of the death - but the statute authorizes the full and complete amount of the assistance due, as though the recipient was still living.

Section 35 states the purpose of the Act and enjoins a liberal construction. It is as follows:

"The purpose of this Act is to inaugurate a program of social security and to provide necessary and prompt assistance to the citizens of this State who are entitled to avail themselves of its provisions. This Act shall be liberally construed in order that its purposes may be accomplished as equitably, economically, and expeditiously as possible."

The above constitutional and statutory provision is a break with the barbarity of the common law. It presents the modern view of the government's duty to the helpless and unfortunate; and like all of our recent social legislation, it is based on the Bible conception of social justice. "And if thy brother be waxen poor, and fallen in decay with thee, then thou shalt relieve him; yea, though he be a stranger, or a sojourner; that he may live with thee." (Levitious 25:35).

Judge Brewster, speaking for the Supreme Court in Powers vs. First National Bank of Corsicana (1942), 161 S. W. (2d) 273, 278, said:

"That the hungry must be fed and the naked clothed has long been accepted by thecivilized social conscience the world over. For some time

Honoraole John H. Winters, page 5

and in many countries it has been recognized as an obligation attaching to the government itself to be discharged by public taxation.  It is a duty that enlightened countries makd every reasonable effort to perform.  For example, while our Constitution says the legislature can make no private grant of public moneys, it empowers that branch of the government to grant aid to indigent and disabled Confederate soldiers and sailors.  Art. 3, sec. 51, Texas Const.  During the widespread economic distress of the last decade a constitutional amendment was adopted by the people of Texas authorizing the legislature to issue 'Bread Bonds' in amount not to exceed twenty million dollars, the proceeds of the sale of which were 'tobe used in furnishing relief and work relief to needy and distressed people and in relieving the hardships resulting from unemployment.' ·Art. 3, Sec. 51a, ibid.  This action the · legislature promptly took and twenty million dollars was spent, and the bonds are being liquidated from the state treasury.  During the same era the Government of the United States poured out billions from the federal treasury to sustain millions of our poverty stricken citizens, the program being financed party by current taxation and partly by unprecedented expansion of the national debt.  The people cheerfully support such measures because the purpose served is vital and presents an undeniable appeal to every humane instinct of civilized man.  Instances might be multiplied but no useful purpose."

Revised Civil Statutes, 1925, Article 10, sets forth the rule which governs the construction of all civil statutory enactments and Section 8 of said Article specifically provides that:

"The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

Familiar examples of our court's liberal construction of our home and family protective statutes are the exemption statutes.  Thus Article 3832, sub-sections 9 and 10, exempt

Honorable John H. Winters, page 6

"two horses and one wagon" and "one carriage or buggy". Our courts have held that a truck is a "wagon" within this Article. (Stitcher vs. Southwest National Bank, 258 S. W. 223; Malone vs. Kennedy, 272 S. W. 509); and that an automobile is a "carriage"; (Parker vs. Sweet, 127 S. W. 881; Fevehouse vs. Smith, 150 S. W. 1196).

Again, "current wages for personal services" are exempt, (Revised Statutes, 1925, Article 4099; Article 3832, sub-section 16). The term "current wages" has been defined to be:

"Such compensation for personal services as are to be paid periodically, or from time to time, as the services are rendered, as where the services are to be paid for by the hour, day, week, month, or year. When wages are payable monthly, the term means wages for the month current at a particular time, * * *" 25 C.J.S. 37 n. 47, 48, citing numerous Texas decisions.

Our courts have held the statutes applicable so long as the wages are uncollected; Smith vs. Oak Cliff Bank and Trust Company, 99 S. W. (2d) 1103. Past due wages left with employer because they cannot be collected are held to be "current wages" and are exempt under the statutes; but past due wages voluntarily left with the employer are held not to be "current wages". Davidson vs. F. H. Logeman Chair Company, 41 S. W. 824.

Were both of the recipients, husband and wife, alive at the time the checks were issued, mailed or received there would be no question of their right to receive the past-due payments. Does death abate this right? We think not. The unctious action of modern legislation and decisions has practically done away with the harshness of the common law rule, epitomized in the Latin maximum: "Actio personalis moritur com persona" (a personal right of action dies with the person). "At common law, every pending action, whether founded on contract or tort, abated by the death of a sole plaintiff or sole defendant and could proceed no further; it perished." Abatement and Revival, 1 Am. Jur. 59 par. 56. In Texas "where the cause of action is one which survives, no suit shall abate because of the death of any party thereto before the verdict or decision of the court is rendered, but such suit shall proceed to judgment as hereinafter provided." (T. R. C. F. No. 150).

Honorable John ii. Winters, page 7

"In determining whether a cause of action abates or survives at common law the nature of the right of action is to be looked to rather than the form in which the right is asserted." Abatement and Revival, 1 Tex. Jur. 26, n. 13.

"As a general rule causes of action which are not assignable do not survive, while causes of actions which are assignable do survive. But this is because of qualities that inhere in the nature of the right rather than in the quality of assignability or non-assignability. Hence were a statute enacted for a special purpose, as for protection of the claimant against improvidence, forbids assignment, nonsurvivability does not necessarily result. Especially is this the rule where the same statute also provides that the cause of action shall survive." Abatement and Revival, 1 Tex. Jur. 26-28, notes 1 and 2.

In this connection Section 29 of Article 695c specifically provides for survival of the payment assistance for it provides a method where a check can be cashed when the recipient died before its receipt by the recipient, and it authorizes the complete payment of the amount due.

While unquestionably the right to the assistance payments is personal to the recipient, just as are the right to claim the exemption benefits of our statutes, the statute (695c, Sec. 29, as amended) does provide for survivorship in that it authorizes the cashing the month's check in which the death occurred.

It is our opinion that the right to assistance is governmental and that the statutory phrase "where the recipient dies before the check issued for such assistance, for the month in which the death occurred, has been endorsed or cashed by the recipient, the amount of check shall be paid," (Art. 695c, Sec. 29) should be liberally construed. That it should be construed in line with our court's construction of "current wages" and "horse, carriage and buggy" provisions of our exemption statutes. The courts recognize the great difficulty in framing any statute which shall definitely and specifically apply in all possible situations. It therefore becomes necessary to consider the circumstances of each individual case and apply it to the general view of the law in question. As stated

Honorable John H. Winters, page 8

by Chief Justice Shaw, in Common wealth vs. Hunt (1842 Mass).
4 Metcalf, 111, p. 129; "The law is not to be hoodwinked by
colorable pretenses. It looks at truth and reality, through
whatever disguise it may assume."

Where an applicant, coming within the measurements
of the law, files his application he has a constitutional
right to assistance; a right which should not be denied him
because of some fieldworker's error in wrongfully removing
the applicant's name from the roll and when that wrong was
corrected, it was corrected and righted as of the date when
the error was first made. To hold otherwise is to punish
one for the wrong of another. Since the deceased was an ac-
tual recipient of the fund, then as a matter of justice and
equity the unpaid assistance should be paid to the person
who took care of the deceased pending the appeal, as found
by the department. That person is entitled to the aid with-
held from the deceased through no fault of her own. It is
manifestly unfair to punish one for the mistaken judgment of
another -- especially is this true where under the admitted
facts of this case recipient was already receiving aid and
assistance and payment was suspended pending appeal and fur-
ther investigation. Certainly, one has no vested right to
payments not yet begun. Future payments are not involved.
What is involved, is past-due payments. In our opinion the
statute should be construed liberally and in line with our
exemption statutes.

Also, the statute further provides "that all old
age assistance . . . warrants not cashed, as provided by this
Act, within a reasonable time after issuance may be cancelled
by the State Comptroller upon proper authorization of the
State Department of Public Welfare" (Art. 695c, Sec. 29).
In the instant case at most all there remained to do was the
manual or physical act of issuing the warrants for the Appeal
Board had reinstated recipient prior to her death; and she
had been placed back on the rolls as of the date of her re-
moval. Here the warrants had been issued. They should not
have been recalled, for in our opinion the warrants, not hav-
ing been cashed a reasonable time after their issuance, should
have been allowed to pass before their cancellation or recall.

We, therefore, answer your first inquiry in the affirmative and as to your second inquiry, the warrants are in the category of uncashed warrants and the statutes as to decedent's estate control.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

David Wunton
Assistant

DW:zd

APPROVED MAY 9 1945